[No. B212761. Second Dist., Div. Eight. Nov. 10, 2009.]

PRINCESS CRUISE LINES, LTD., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
H. ROGER WANG et al., Real Parties in Interest.

**COUNSEL**

Kaye, Rose & Partners, Bradley M. Rose, Carolyn J. Kaye, Aksana Moshaiv and André M. Picciurro for Petitioner.

No appearance for Respondent.

Bailey Law Group, Mohammed K. Ghods and William A. Stahr for Real Parties in Interest.

**OPINION**

**FLIER, J.**—The plaintiffs, real parties in interest in the proceedings before us, H. Roger Wang and Vivine Wang (from time to time collectively referred to as the Wangs), sued petitioner Princess Cruise Lines, Ltd., over charges added to the price of shore excursions taken during a cruise conducted by petitioner. The Wangs asserted five causes of action. The first three were based on Business and Professions Code sections 17200 (first cause of action) and 17500 (second) and on Civil Code section 1750 et seq. (third). Respectively, these statutes are California's unfair competition law (UCL), false advertising law (FAL) and Consumers Legal Remedies Act (CLRA; Civ. Code, § 1750 et seq.). The fourth and fifth causes of action were based respectively on common law fraud and negligent misrepresentation.

Petitioner moved for summary judgment and summary adjudication. The trial court granted summary adjudication on the fourth and fifth causes of

action because the Wangs could not show they relied on petitioner's alleged misrepresentations. The trial court, however, denied the motion for summary judgment because it concluded that on the UCL, FAL and CLRA causes of action the Wangs did not have to show that they relied on petitioner's alleged misrepresentations.

We issued the order to show cause, received briefing and heard oral argument on the question whether a plaintiff asserting UCL, FAL and CLRA causes of action must show that he or she relied on the defendant's misrepresentations. We conclude that the answer is yes and we also address other issues that need resolution. We vacate the trial court's order denying petitioner's motion for summary judgment and we remand with directions to grant the motion and to conduct such further proceedings as are appropriate.

## THE FACTS AND THE PLEADINGS

The Wangs bought tickets issued by petitioner for themselves and their two daughters in 2005 for a two-week cruise with stops in six northern European cities. They also purchased and paid for shore excursions that were offered as part of the cruise.

The gravamen of the operative pleading, the second amended complaint (referred to hereafter as the complaint), is that petitioner represented that the shore excursions were operated and controlled by third parties, and not petitioner, who were independent contractors and that, as far as the shore excursions were concerned, petitioner only served as an agent for these independent operators. In truth, the complaint alleges, petitioner effectively controlled the operators of the shore excursions and "inflated charges for shore excursions which exceeded the price the shore excursion providers were actually charging for those services."

The complaint seeks relief on behalf of the Wangs and for a class of persons similarly situated, which the complaint defines as all California residents who were passengers on cruises operated by petitioner who paid prices for shore excursions that were "in excess of the shore excursion operator's actual price."

The first cause of action alleges a violation of Business and Professions Code section 17200. In pertinent part, this cause of action alleges that the Wangs "read and relied upon [petitioner's] misrepresentations including the representations in [petitioner's] ticket contract . . . and Cruise Answer Book . . . to their detriment." The second cause of action is brought under Business and Professions Code section 17500 for false advertising. The third cause of action seeks damages and injunctive relief under the CLRA (Civ.

Code, § 1750 et seq.). The fourth cause of action alleges common law fraud and states in part that the Wangs "and the Class members justifiably relied on the representations made by [petitioner] and as a result have suffered damages in an amount to be proven at trial." The final cause of action is for negligent misrepresentation and it alleges that the Wangs reasonably believed that petitioner was not profiting from the sale of the shore excursions.

## THE WANGS' DISCOVERY RESPONSES

In their depositions, the Wangs admitted that prior to taking the cruise, neither one of them ever spoke with any officer or employee of petitioner and that they did not receive any written materials from petitioner, with the exception of the itinerary that was given to them by their travel agent who was not affiliated with petitioner. Vivine Wang's answers were particularly explicit; it was she who made the arrangements for the cruise. She stated she did not have any conversations with anyone from "Princess Cruises" prior to the cruise. When asked "[d]id Princess Cruises make any representations to you regarding your cruise prior to the cruise?" she answered no. As far as the excursions were concerned, Vivine Wang told her travel agent that she wanted to go on the same excursions that her traveling group had booked and "I want to go on the shore excursion . . . whatever it cost [sic]. It's fine."

In her declaration filed in opposition to the motion for summary judgment, Vivine Wang attempted to backpedal from these concessions; we set forth the pertinent part of her declaration in the margin.[1] The statement in her declaration that "I did not tell my travel agent that I wanted to go on the shore excursions irrespective of the cost" flatly contradicts her deposition testimony. A declaration that is inconsistent with previous deposition testimony may be disregarded for the purposes of a motion for summary judgment. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21 [112 Cal.Rptr. 786, 520 P.2d 10] (*D'Amico*).)

## THE TRIAL COURT'S RULING

The trial court ruled that, as to the common law causes of action for fraud and negligent misrepresentation, the Wangs had "not shown she [Vivine

---

[1] "In my deposition I answered in the affirmative when asked if I would have gone on the shore excursions no matter how much they were priced. That is not quite what I meant and I would like to clarify my answer. What I meant was that I was willing at the time to pay the *stated* price without hesitation because of the many representations Princess made concerning the 'value' of the tickets (i.e., Princess' monitoring of prices to ensure 'good value'), the 'courtesy' nature of Princess' service, and its 'merely an agent' purported relationship with the 'independent' tour operators. I did not tell my travel agent that I wanted to go on the shore excursions irrespective of the cost."

Wang] relied on any statements or representations made by [petitioner]" and that this was fatal to these causes of action. The court also dismissed Vivine Wang's declaration as inconsistent with her deposition testimony.

As to the UCL, FAL and CLRA causes of action, the court ruled that "there is no reliance requirement." The court went on to find: "As to the 17200 [UCL] cause of action there is a factual issue of whether [petitioner's] practice of adding a surcharge on the onshore excursions is unfair. [¶] A trier of fact may decide that this is much ado about nothing, or it may decide that these practices are so deceptive so as to be worthy of relief. That is a question for the trier of fact, not this court at this time."

Specifically as to the CLRA cause of action, the trial court ruled that summary judgment was barred by virtue of a provision to that effect set forth in subdivision (c) of Civil Code section 1781.[2]

The trial court filed its ruling on November 21, 2008. *In re Tobacco II Cases* (2009) 46 Cal.4th 298 [93 Cal.Rptr.3d 559, 207 P.3d 20] (*Tobacco II*), which is central to these proceedings, was filed on May 18, 2009. In challenging the trial court's ruling, petitioner initially relied on *Hall v. Time, Inc.* (2008) 158 Cal.App.4th 847, 855 [70 Cal.Rptr.3d 466],[3] a decision that held that a plaintiff stating a misrepresentation claim in a UCL claim had to show that the injury was caused by the plaintiff's reliance on the misrepresentation. The parties have filed additional briefs that address the *Tobacco II* decision.

## DISCUSSION

1. *The Trial Court Erred in Concluding That the CLRA Cause of Action Was Barred by Civil Code Section 1781, Subdivision (c)*

Although subdivision (c) of Civil Code section 1781 precludes a motion for summary judgment brought under Code of Civil Procedure section 437c, subdivision (c)(3) of Civil Code section 1781 empowers the trial court to determine that the action "is without merit or there is no defense to the action." (See fn. 2, *ante*.)

---

[2] Civil Code section 1781, subdivision (c) states: "If notice of the time and place of the hearing is served upon the other parties at least 10 days prior thereto, the court shall hold a hearing, upon motion of any party to the action which is supported by affidavit of any person or persons having knowledge of the facts, to determine if any of the following apply to the action: [¶] (1) A class action pursuant to subdivision (b) is proper. [¶] (2) Published notice pursuant to subdivision (d) is necessary to adjudicate the claims of the class. [¶] (3) The action is without merit or there is no defense to the action. [¶] *A motion based upon Section 437c of the Code of Civil Procedure shall not be granted in any action commenced as a class action pursuant to subdivision (a).*" (Italics added.)

[3] The petition was filed in this court on December 18, 2008. We held the petition pending the decision in *Tobacco II*.

*Smith v. Wells Fargo Bank, N.A.* (2005) 135 Cal.App.4th 1463, 1474–1475 [38 Cal.Rptr.3d 653], provides a partial explanation for these seemingly contradictory provisions: "Although a CLRA cause of action cannot be summarily disposed of by means of a motion for summary adjudication or summary judgment (Civ. Code, § 1781, subd. (c)), it can be dismissed before trial on a motion for a determination that it is without merit (i.e., a no-merit determination). (Civ. Code, § 1781, subd. (c)(3); *Olsen v. Breeze, Inc.* (1996) 48 Cal.App.4th 608, 624 [55 Cal.Rptr.2d 818].) In practice, courts nevertheless have applied the standards applicable to motions for summary judgment and summary adjudication in deciding motions for no-merit determinations. (See, e.g., *Kagan v. Gibraltar Sav. & Loan Assn.* (1984) 35 Cal.3d 582, 589, 597 [200 Cal.Rptr. 38, 686 P.2d 1060]; *Consumer Advocates v. Echostar Satellite Corp.* (2003) 113 Cal.App.4th 1351, 1359–1362 [8 Cal.Rptr.3d 22].) One court commented that it could 'see no meaningful distinction in the choice' between dismissal of a cause of action after a motion for summary judgment and a motion for a no-merit determination. (*Consumer Advocates*, at p. 1359.)"

■ The nub of the matter is that the prohibition of summary judgment motions set forth in subdivision (c) of Civil Code section 1781 is intended to preclude a defendant from eliminating, one by one, individually named plaintiffs and thus derailing the CLRA class action. (*Kagan v. Gibraltar Sav. & Loan Assn., supra*, 35 Cal.3d 582, 597 (dis. opn. of Kaus, J.).) In other words, the entire action must be challenged, if it is challenged at all. And if the challenge is made, it is treated as a motion for summary judgment.

As petitioner points out, the motion as to the CLRA cause of action was also brought under subdivision (c)(3) of Civil Code section 1781. Thus, the trial court was required to address the no-merit motion as to the CLRA cause of action. We return to the CLRA cause of action in part 5, *post*.

2.  *A Plaintiff in a UCL Action Based on a Fraud Theory Involving False Advertising and Misrepresentation Must Show Reliance*

■ The court in *Tobacco II* first concluded that only the class representatives must meet the standing requirement under California's UCL. The court then proceeded to the next topic, which was "the causation requirement for purposes of establishing standing under the UCL, and in particular what is the meaning of the phrase 'as a result of' in [Business and Professions Code] section 17204?[4] We conclude that a class representative proceeding on a claim of misrepresentation as the basis of his or her UCL action must

---

[4] "Actions for relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction . . . by a person who has suffered injury in fact and has lost money or property *as a result* of the unfair competition." (Bus. & Prof. Code, § 17204, italics added.)

demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." (*Tobacco II, supra,* 46 Cal.4th 298, 306.)

■ There are two aspects to this holding. First, it is very clear that reliance is required in a UCL action. Second, it is also clear that this is true of UCL actions involving some form of fraud, but not all UCL actions. As the court put it: "We emphasize that our discussion of causation in this case is limited to such cases where, as here, a UCL action is based on a fraud theory involving false advertising and misrepresentations to consumers. The UCL defines 'unfair competition' as 'includ[ing] any unlawful, unfair or fraudulent business act or practice . . . .' ([Bus. & Prof. Code,] § 17200.) There are doubtless many types of unfair business practices in which the concept of reliance, as discussed here, has no application." (*Tobacco II, supra,* 46 Cal.4th 298, 325, fn. 17.)

The Wangs necessarily concede that a UCL action predicated on fraud requires actual reliance but they offer two contentions that relieve them of the burden of this rule. First, they point to the court's refinement of the rule requiring reliance that a plaintiff "is not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements where, as here, those misrepresentations and false statements were part of an extensive and long-term advertising campaign." (*Tobacco II, supra,* 46 Cal.4th 298, 328.) The Wangs claim that there was such an advertising campaign in this case and they go on to contend that they learned about petitioner's representations regarding the excursions from their friends who also took the cruise, meaning that they were actually exposed to the alleged misrepresentations.[5] Second, the Wangs claim that adding a surcharge to the price of excursions is an unfair business practice that does not involve fraud, i.e., they seek to place themselves within the rule set forth in *Tobacco II* that UCL claims that are not based on fraud do not require reliance.

We address these contentions in the following parts.

3. *The Wangs Did Not Rely on Any Representations Made by Petitioner*

■ The problem, from a pragmatic perspective, with the Wangs' contentions about reliance is that it made no difference to them how much the excursions cost. As Vivine Wang put it in her deposition, she told her travel agent that she wanted to go on the same excursions that her traveling group had booked and that "I want to go on the shore excursion . . . whatever it cost

---

[5] The complaint alleges that the Wangs "read and relied upon [petitioner's] misrepresentations including the representations in [petitioner's] ticket contract . . . and Cruise Answer Book . . . to their detriment." These allegations appear to have been abandoned.

[*sic*]. It's fine." At the threshold, therefore, it must be said that there was *no reliance*, i.e., the Wangs would have gone on the excursions whatever the price was and without reference to anything petitioner said or did in connection with the excursions. It therefore follows that it is immaterial how the Wangs heard about the excursions and what, if anything, petitioner said or wrote about the excursions.

It must also be said that we are not inclined to ignore the Wangs' repeated admissions that they had no contact with petitioner and received nothing from the petitioner. The Wangs' frank concessions can be explained by the circumstance that, as petitioner points out, the Wangs initially sued petitioner because they were dissatisfied with their accommodations on the cruise and they also claimed that petitioner had overcharged them by requiring them to pay certain governmental fees; these claims have been abandoned. Thus, at the time their depositions were taken, the Wangs were not concerned about the excursions. In short, there is every reason to conclude, as the trial court did, that the Wangs were telling the truth when they stated that they had no contact of any kind with petitioner prior to embarking on the cruise. Any effort to change their testimony about the state of their knowledge (as opposed to referring to an objective fact independent of their testimony) is barred by *D'Amico*.

Given these facts, there is no reason to delve into the contention that what is at issue here is a prolonged advertising campaign and that the Wangs therefore do not have to show individualized reliance on specific misrepresentations. Nor is it necessary to consider petitioner's argument that the Wangs are barred from contending there was reliance as they did not challenge the trial court's finding by way of a cross-petition.

### 4. *There Are No Material Questions of Fact About the Cost of the Excursions*

Petitioner supported its motion for summary judgment in part with a declaration of Bruce Krumrine, who is petitioner's vice-president in charge of shore operations. According to Krumrine's declaration, petitioner acts only as ticketing agent for independent tour operators and it does not own these shore excursion companies. Petitioner, however, incurs substantial costs in vetting shore excursion operators and in making them available to cruise passengers. While the Wangs point to a "Tour Operators Manual" that sets forth petitioner's standards for shore excursions in considerable detail, the Wangs offer no facts that contradict the basic aspects of Krumrine's declaration.

The Wangs' claim about the shore excursions boils down to two arguments. First, the Wangs state that the excursion operators are not really

independent because petitioner exerts extensive and minute control over their operations. Second, the Wangs claim that a surcharge added to the shore excursions is an unfair business practice.

The first of these two arguments is rather pointless. Whether shore excursion operators are actually independent may be a matter that is of interest to them and petitioner but it is of no moment to passengers when they choose whether to go on an excursion. There is no indication that the measure of control that petitioner has over excursion operators has a negative effect of any kind on cruise passengers going on the excursions. In fact, given that petitioner has an obvious interest in ensuring that the excursions go smoothly and operate as promised (which, apart from the cost, are the only things the passengers would actually care about), it seems that the more control petitioner has over the excursions, the better, at least from the passengers' point of view.

■ As far as overcharging, i.e., adding a surcharge to the excursion operator's price, is concerned, the Wangs state that the price of the excursions is "grossly inflated . . . sometimes up to 100% over the price charged by the tour operator." There are two flaws in this contention. First, the Wangs do not cite to the record where the fact or facts appear that support this contention. Statements of facts not supported by references to the record may be disregarded as a violation of rule 8.204(a)(1)(C) of the California Rules of Court. (*Yeboah v. Progeny Ventures, Inc.* (2005) 128 Cal.App.4th 443, 451 [27 Cal.Rptr.3d 150].) Second, record references are lacking because the record contains no facts that support this claim. While the Wangs claim that there is "ample evidence" that the cost of the excursions was excessive, there is simply no such evidence in this record. Colorful language, which is not in short supply in the Wangs' briefs,[6] is not a substitute for facts or evidence.

We also note that the Wangs stated they did not care what the excursions cost. It is therefore less than convincing that they are now outraged by the allegedly "huge" (fn. 6, *ante*) surcharge.

We are more concerned over the trial court's finding that there is a "factual issue of whether [petitioner's] practice of adding a surcharge on the onshore excursions is unfair." As petitioner correctly points out, the trial court was required to but did not identify the *evidence* that shows that this is a triable

---

[6] "Unsuspecting customers are over-charged for tours that actually cost significantly less. Petitioner keeps its huge mark-up without having to justify its prices to anyone, while discouraging comparison shopping with other on-shore excursion providers by telling passengers it 'monitors' prices for value." Also according to the Wangs, petitioner's conduct is "immoral, unethical, oppressive, and/or unscrupulous."

issue of fact.[7] The factually unsupported *claim* that the surcharge is excessive is not *evidence*. Thus, we are left to wonder what evidence, if any, the trial court relied on in finding the fairness of the surcharge to be a factual issue. This is exactly what the cited provision of summary judgment law (see fn. 7, *ante*) is designed to forestall. As it is, the only evidence on this issue that we discern in the record is Krumrine's declaration.

Krumrine's declaration acknowledges that there is a surcharge and it explains that petitioner incurs costs in vetting and handling the shore excursions. There is therefore a reasonable explanation for the basis of the surcharge. At this point, it became the Wangs' burden to adduce facts that would show the surcharge to be unreasonable. We agree with petitioner that this case is akin to the situation in *Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1508 [82 Cal.Rptr.2d 368], when the plaintiffs, who were claiming that the defendant imposed unreasonable surcharges on renters who were under the age of 25, failed to produce any evidence that the surcharges were unreasonable. The court rejected the claim for this reason, as do we in the case before us. We also join the court in *Lazar v. Hertz Corp.* in noting that, in the absence of legislatively crafted standards, it is not for us to lay down economic policy that passes on the reasonableness of charges. (*Id.* at p. 1509.)

We conclude the trial court erred in finding that there was a factual issue whether petitioner's surcharges added to the price of onshore excursions are unfair because there is no evidence to contradict Krumrine's declaration that the surcharges are justified by petitioner's expenses.

5. *Reliance Is a Requirement of CLRA Actions*

Civil Code section 1780, subdivision (a) provides: "Any consumer who suffers any damage *as a result* of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person to recover or obtain any of the following: [listing generic types of recoveries]." (Italics added.)

It appears that the analysis of the phrase "as a result" found in *Tobacco II, supra*, 46 Cal.4th 298, 324–326, applies to this phrase in Civil Code section 1780, subdivision (a), which means that reliance is required for CLRA actions, with the limitations noted in *Tobacco II*.

---

[7] "Upon the denial of a motion for summary judgment, on the ground that there is a triable issue as to one or more material facts, the court shall, by written or oral order, specify one or more material facts raised by the motion as to which the court has determined there exists a triable controversy. *This determination shall specifically refer to the evidence proffered in support of and in opposition to the motion which indicates that a triable controversy exists.*" (Code Civ. Proc., § 437c, subd. (g), italics added.)

## DISPOSITION

The alternative writ is discharged. The respondent court is ordered to vacate its order denying summary judgment in the action. The respondent court is directed to enter an order granting the motion for summary judgment and to conduct such further proceedings as are appropriate and that are consistent with this opinion. Petitioner is to recover its costs in this proceeding.

Rubin, Acting P. J., and Bigelow, J., concurred.

A petition for a rehearing was denied December 10, 2009, and the petition of real parties in interest for review by the Supreme Court was denied February 3, 2010, S178842. George, C. J., did not participate therein.