[No. A124999. First Dist., Div. Five. Aug. 10, 2010.]

ARACELI VITUG, Plaintiff and Appellant, v.
ALAMEDA POINT STORAGE, INC., Defendant and Respondent.

## COUNSEL

Ron Bochner for Plaintiff and Appellant.

Ericksen Arbuthnot and Lois A. Lindstrom for Defendant and Respondent.

## OPINION

**SIMONS, Acting P. J.**—The California Self-Service Storage Facility Act (the Act) (Bus. & Prof. Code, § 21700 et seq.)[1] regulates certain aspects of the relationship between owners and renters of storage units at self-service storage facilities. In this case, we address the following question: Does the Act prohibit a self-service storage facility from continuing to charge rent and late fees to the renter of a storage unit after the facility has terminated the renter's right to access the unit due to nonpayment of rent? In the present case, plaintiff and appellant Araceli Vitug (appellant) rented a storage unit from defendant and respondent Alameda Point Storage, Inc. (respondent). After appellant fell behind on her rent payments, respondent sent her by certified mail a preliminary lien notice and then a notice of lien sale, which stated that her "right to use" her storage unit "has been terminated." Appellant subsequently paid respondent more than the lien amount specified in the notice. Respondent took the position that appellant's payment was insufficient because appellant owed respondent for additional monthly rent and late fees that had accrued following issuance of the notice. Respondent also threatened to sell appellant's property at auction and denied appellant access to her property.

Appellant brought suit against respondent alleging, among other things, causes of action under the Unfair Business Practices Act (§ 17200 et seq.) and the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.)

---

[1] All further undesignated section references are to the Business and Professions Code.

based on allegations that respondent violated the Act by continuing to charge rent and late fees after terminating her right to use her storage unit in the notice of lien sale. The trial court granted respondent's motion for summary adjudication and respondent's subsequent no-merit motion regarding the CLRA claim, concluding that the Act, itself, did not prohibit respondent from charging additional rent and late fees. We agree and affirm. We do not, however, decide whether respondent had a right to charge the additional rent and late fees under appellant's lease agreement, because appellant has forfeited that issue.

## BACKGROUND

Respondent is a self-storage facility located in Alameda, California. In 2002, appellant stored her personal property at respondent's facility pursuant to a written lease agreement.

Appellant became delinquent paying her rent and, on April 18, 2004, respondent sent appellant by certified mail a preliminary lien notice stating that she owed respondent $124.75 for rent and $45 for late fees (at $15 per month). The notice further stated, "If this sum is not paid in full before [May 5, 2004,] your right to use the storage space will terminate, you will be denied acces[s] and an owner's lien on any stored property will be imposed." On May 4, 2004, respondent sent appellant by certified mail a notice of lien sale stating, "Your right to use storage unit [No.] 1510 . . . has been terminated and you no longer have access to your stored property. The stored property is subject to a lien in the amount of $278[.] This amount will continue to increase under the terms of your rental agreement until paid in full." The May 4 notice indicated that appellant's property would be sold after a certain date, but the date is not legible on the document.

The sale of appellant's property did not take place because she requested that the sale be delayed. On September 2, 2004, appellant paid respondent $500; respondent took the position that she owed an additional $272 at that point. In February 2005, respondent sent appellant an "auction letter," and in March respondent advertised a lien sale in the Alameda Journal. Respondent sent appellant another auction letter, on April 6, and appellant contacted respondent to request further delay of the sale. Appellant signed an agreement to pay respondent $950, but she scratched out language stating that she did not contest the amount and that the agreement was in full settlement of the dispute. Appellant did not pay the $950.

On May 20, 2005, respondent sent appellant a second notice of lien sale, specifying a lien amount of $1,282 and that appellant's property would be sold after June 4. Appellant executed and returned to respondent a "Declaration in Opposition to Lien Sale," which prevented respondent from proceeding with the lien sale (see §§ 21706, 21710).

In 2007, appellant filed her second amended and operative complaint against respondent, alleging five causes of action. In 2008, respondent filed a motion for summary judgment, or in the alternative for summary adjudication, as to the first cause of action (declaratory and injunctive relief), the third cause of action (violation of the Unfair Business Practices Act), the fourth cause of action (conversion), and the fifth cause of action (trespass to chattels). The trial court granted the motion for summary adjudication on those four causes of action. Respondent filed a separate motion, pursuant to Civil Code section 1781, subdivision (c)(3), contending that appellant's second cause of action (violation of the CLRA) was without merit. (See *Princess Cruise Lines, Ltd. v. Superior Court* (2009) 179 Cal.App.4th 36, 41–42 [101 Cal.Rptr.3d 323] (*Princess Cruise*).) The trial court granted the CRLA no-merit motion and entered judgment in favor of respondent. This appeal followed.

## DISCUSSION

The trial court granted respondent's motion for summary adjudication and the CLRA no-merit motion on the ground that the Act did not prohibit respondent from charging additional rent and late fees after termination of appellant's right to use her storage unit. We review the trial court's decision de novo. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 [12 Cal.Rptr.3d 615, 88 P.3d 517]; *Princess Cruise, supra,* 179 Cal.App.4th at p. 42.)

At the outset, it is important to clearly delineate the scope of the issues on appeal. Appellant alleged in her complaint that respondent's notices were inadequate under the Act and that it was a violation of the Act to charge rent and late fees after termination of appellant's right to use her storage unit. Her unfair business practice and CLRA claims, the sole claims raised on appeal,[2] are based on those alleged violations of the Act. Critically, appellant did *not* allege in her complaint that the rent and late fees could not be charged under the lease agreement, and her unfair business practice and CLRA claims are not based on violation of the lease agreement. The lease agreement was not

---

[2] The complaint also contains causes of action for trespass and conversion, but appellant does not contend on appeal that the trial court erred in dismissing those claims.

attached to the complaint; instead, it was placed into the record by respondent, as an attachment to a declaration in support of the motion for summary judgment/adjudication. Appellant did not argue below, in opposing summary judgment/adjudication, that imposition of the rent and late fees was in violation of the lease agreement. And the only argument adequately raised on appeal is that the trial court erred in concluding respondent did not violate the Act by continuing to charge rent and late fees after mailing the notice of lien sale. Appellant makes no reasoned argument that respondent violated the lease agreement by continuing to charge rent and late fees: her briefs contain no discussion of the language of the lease agreement, and she cites no statutory or case authority that the notice of lien sale had the effect of terminating her obligation to pay rent and late fees under the agreement.[3] Appellant has, thus, forfeited any such contentions. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273]; *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 799 [99 Cal.Rptr.3d 464].)

■ In determining whether respondent's conduct violated the Act, "we apply well-established rules of statutory construction. The goal of statutory construction is to ascertain and effectuate the intent of the Legislature. [Citation.] Often, the words of the statute provide the most reliable indication of legislative intent. [Citation.] However, when the statutory language is itself ambiguous, we must examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes. [Citation.] ' "When the language is susceptible of more than one reasonable interpretation . . . we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." ' [Citation.]" (*Rothschild v. Tyco Internat. (US), Inc.* (2000) 83 Cal.App.4th 488, 496 [99 Cal.Rptr.2d 721].)

The Act does not expressly authorize a storage facility to charge rent or prohibit a facility from charging rent in any particular circumstance. The Act does expressly authorize the imposition of late fees in section 21713.5. Under section 21713.5, subdivision (a), "[t]he owner of a self-service storage facility may assess a reasonable late payment fee if an *occupant* does not pay the entire amount of the rental fee specified in the rental agreement . . . ." (Italics

---

[3] Appellant asserts in passing that "when there are no rights under an agreement, demand for further fees pursuant to that agreement can no longer be justified." But she provides no discussion of any of the specific provisions of the lease agreement or any citation to authorities.

added.)[4] The dispute in this case relates to the meaning of the term "occupant," as used in section 21713.5, subdivision (a). The Act defines " 'occupant' [as] a person . . . who is entitled to the use of the storage space at a self-service storage facility under a rental agreement, to the exclusion of others." (§ 21701, subd. (c).) Appellant contends she was no longer an "occupant" who could be charged late fees after respondent sent her the notice of lien sale, which stated that her right to use her storage unit had been "terminated" and she "no longer [had] access" to her property in the unit.[5] She also points to section 21705, subdivision (c)(1)(A), which requires that notices of lien sales state "[t]hat the occupant's right to use the storage space has terminated and that the occupant no longer has access to the stored property." Appellant argues that, under the Act and under the language of respondent's notice, she clearly was not a person "entitled to the use of the storage space . . . to the exclusion of others" (§ 21701, subd. (c)) after respondent sent her the notice of lien sale in May 2004. Accordingly, she was not an "occupant" to whom a late fee could be charged under section 21713.5, subdivision (a).

Respondent does not dispute that, after service of the notice of lien sale, appellant no longer met the section 21701, subdivision (c) definition of "occupant." However, respondent points out that the term "occupant" is used many times in the Act to refer to someone who no longer has a right to access his or her unit. For example, sections 21705, subdivision (c)(1)(D) and 21707, subdivision (b) refer to the right of the "occupant" to the proceeds of a sale

---

[4] In full, section 21713.5 provides:

"(a) The owner of a self-service storage facility may assess a reasonable late payment fee if an occupant does not pay the entire amount of the rental fee specified in the rental agreement, subject to the following requirements:

"(1) No late payment fee shall be assessed unless the rental fee remains unpaid for at least 10 days after the date specified in the rental agreement for payment of the rental fee.

"(2) The amount of the late payment fee shall be specified in the occupant's rental agreement.

"(3) Only one late payment fee shall be assessed for each rental fee payment that is not paid on the date specified in the rental agreement.

"(b) For purposes of this section, a 'reasonable late payment fee' is one that does not exceed the following:

"(1) Ten dollars ($10), if the rental agreement provides for monthly rent of sixty dollars ($60) or less.

"(2) Fifteen dollars ($15), if the rental agreement provides for monthly rent greater than sixty dollars ($60), but less than one hundred dollars ($100).

"(3) Twenty dollars ($20) or 15 percent of the monthly rental fee, whichever is greater, if the rental agreement provides for monthly rent of one hundred dollars ($100) or more."

[5] Because the notice of lien sale was sent by certified mail, appellant did not have an opportunity to regain access to the unit; if the notice had been sent by regular first class mail, she would have had a 14-day period during which she could have regained use of her storage unit by paying the full lien amount. (§ 21705, subd. (b).)

exceeding the lien amount. Similarly, section 21710 requires that the "occupant" be served with copies of the summons and complaint in any action to enforce an owner's lien. Those sections of the Act use the term "occupant" in circumstances where necessarily a notice of lien sale has been sent and the "occupant" no longer has the right to access his or her unit. Respondent also relies on section 21702, which does not use the term "occupant" and which provides that the owner has a lien "for rent, labor, late payment fees, or other charges, *present or future*, incurred pursuant to the rental agreement and for expenses necessary for the preservation, sale, or disposition of personal property subject to the provisions of this chapter." (Italics added.) Respondent argues section 21702 shows the Legislature contemplated that there would be "future" rent and late fees that would continue to accumulate after service of the notice of lien sale.

The Act is ambiguous. Looking solely at the definition of "occupant" in section 21701, subdivision (c) and the language of section 21713.5, subdivision (a) authorizing imposition of late payment fees, the Act seems to contemplate imposition of such fees only on persons with the right to access their units. On the other hand, in other sections of the Act, such as those described in the previous paragraph, the Legislature disregarded the section 21701, subdivision (c) definition and used the term "occupant" to refer to persons who no longer have the right to access their units. Furthermore, section 21702 contemplates "future" rent and late fees. Arguably, the Legislature used "occupant" in section 21713.5, subdivision (a) as it did in other portions of the Act—in a general sense, rather than as the term is defined in section 21701, subdivision (c).

■ Because there is an inconsistency between the Act's definition of "occupant" and the Act's use of that term, this court must determine the Legislature's intent. We conclude that, in enacting the Act, and section 21713.5 in particular, the Legislature did not intend to regulate the circumstances under which rent and late fees could be charged. Instead, the Legislature intended to provide owners with liens, establish fair procedures to enforce the liens, and determine the *amount* of reasonable late fees. This is apparent from the fact that the Act addresses those matters directly and in detail but does not expressly address when rent and late fees may be charged. In particular, no provision of the Act addresses whether owners may charge rent after the mailing of the notice of lien sale. The Act authorizes late fees and provides that there should be only one late fee for each late rent payment, but the Act defers to the rental agreement for determination of when the rent and associated late fee becomes due. (§ 21713.5, subd. (a)(3) ["Only one late payment fee shall be assessed for each rental fee payment that is not paid on the date specified in the rental agreement."].) ■ And the Act defers to the underlying rental agreement in determining the amount of rent and late fees encompassed by a lien: to wit, section 21702 provides that owners have

a lien for all charges "present or future, *incurred pursuant to the rental agreement.*" (Italics added.)

The legislative history supports this interpretation.[6] The Act, enacted in 1981, was based on a model developed by the National Self-Service Storage Facility Association. (Assem. Com. on Judiciary, Bill Dig., Assem Bill No. 750 (1981–1982 Reg. Sess.) as amended May 11, 1981, p. 4.) The purpose of the Act was to provide self-storage facility owners an "effective remedy against defaulting customers." (*Ibid.*) The lien and lien sale provisions would help owners "[¶] (1) recover the storage facility; [¶] (2) collect the rent and other contractual charges owed; and [¶] (3) sell or otherwise dispose of any personal property remaining after termination." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 750 (1981–1982 Reg. Sess.) as amended May 26, 1981, p. 3.)

As for late fees, the legislative history indicates that Assembly Bill No. 2263 (1999–2000 Reg. Sess.), which added the late fee provision in the year 2000, was sponsored by the California Self-Storage Coalition, which sought certainty regarding the reasonableness of late fees in the industry. A Senate Judiciary Committee analysis explained: "[Late] fees currently are not regulated by the Act. Instead, the 'fairness' of a particular company's late fee has been left to the courts to resolve. The sponsor asserts that this bill would provide storage owners and operators clear statutory guidance as to what fees are permissible, thereby reducing the risk of future litigation. The sponsor argues that the bill provides a fair balance between the parties, by protecting storage customers from unreasonably excessive late fees, while providing the owners and operators with certainty in the area of permissible late fees." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2263 (1999–2000 Reg. Sess.) as amended May 10, 2000, p. 3.) The Legislature included a specific scale of late fees in the Act in order to avoid court proceedings to determine the legality of self-storage facility late fees as liquidated damages provisions under Civil Code section 1671. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2263 (1999–2000 Reg. Sess.) as amended May 10, 2000, pp. 3–4.) Thus, the Legislature's intent was to authorize late fees whenever rent is unpaid and to establish a scale of reasonable fees to avoid litigation over fee amounts. The legislative history does not reflect consideration of the circumstances governing when late fees may no longer be charged.

Appellant points to language in the Senate Judiciary Committee report stating, "the self-service storage facility owners contend that the fees are a fair estimate of their losses in light of the fact that they do not collect security

---

[6] We take judicial notice of the legislative history of Assembly Bill No. 750 (1981–1982 Reg. Sess.) and Assembly Bill No. 2263 (1999–2000 Reg. Sess.). (See *People v. Superior Court (Ferguson)* (2005) 132 Cal.App.4th 1525, 1532 [34 Cal.Rptr.3d 481].)

deposits on these rental agreements, and they are unable to collect any rent for at least a month when a renter fails to pay the rent and the agreement needs to be terminated." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2263 (1999–2000 Reg. Sess.) as amended May 10, 2000, p. 4.) Although this language suggests the Legislature was aware that at least some owners did not anticipate collecting additional rent from defaulting renters, the Legislature did not include any provisions limiting when rent may be charged to renters and it adopted language deferring to the rental agreement regarding the imposition of rent and late fees. Although it may be that rent and late fees typically may not be imposed under lease agreements after termination of access to a storage unit, the legislative history does not indicate that the Legislature intended to impose that limit through the Act. If that had been the Legislature's intent, it likely would have done so directly, rather than through the use of a term ("occupant") employed loosely throughout the Act.

If this court were to interpret the use of "occupant" in section 21713.5 as a restriction on when late fees may be charged to a renter, it would create a potential conflict with section 21702. Specifically, section 21713.5 would prohibit the imposition of late fees after termination of access to a unit, but section 21702 provides for a lien encompassing *any* late fees "incurred pursuant to the rental agreement," which theoretically could include late fees imposed following a notice of lien sale.[7] Similarly, appellant's interpretation would create a potential internal conflict within section 21713.5, which authorizes assessment of a late fee whenever a rent payment is late under a rental agreement. (§ 21713.5, subd. (a)(3) ["Only one late payment fee shall be assessed for each rental fee payment that is not paid on the date specified in the rental agreement."].) It would be illogical to interpret the use of the ambiguous term "occupant" in section 21713.5 as a limit on when late fees can be charged, where the Act does not purport to regulate when rent can be charged, and late fees are keyed to the rent payments. Finally, appellant's interpretation of section 21713.5 is also in conflict with the reference to "future" late fees in section 21702.

■    Appellant argues it would be unreasonable to conclude that owners of storage facilities may continue to charge rent and late fees indefinitely. But we do not hold that the Act authorizes that result. Instead, we hold that the Act does not itself prohibit the charging of rent and late fees after termination of a renter's access to his or her unit; the Act defers to the underlying rental agreement for determination of what charges are proper and may be included in the lien. It may be that common law or statutory authority dictates that, under month-to-month lease agreements, it is improper to charge rent and late

---

[7] Appellant's interpretation would even appear to prohibit a self-storage facility from charging, under section 21713.5, additional late fees to a renter who requests delay of a lien sale and expressly agrees to pay additional rent until he or she can pay off the lien amount.

fees after termination of a renter's access to a storage unit. However, appellant has forfeited that issue. As noted previously, appellant did not allege in her complaint that imposition of further rent and late fees was unlawful because the lease agreement was terminated by the notice of lien sale, did not argue that ground in opposition to the motion for summary judgment/adjudication below, and has not provided reasoned argument on appeal for that proposition. Appellant's only cognizable argument on appeal is that the rent and fees violated the Act. Accordingly, we express no opinion on the validity of the rent and late fee charges imposed following the notice of lien under general principles of contract law or any authority other than the Act.

■ Appellant has failed to show that the trial court erred in concluding that the rent and late fees imposed by respondent following the notice of lien sale were not in violation of the Act. That conclusion is fatal to the three causes of action at issue on appeal.

## DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal.

Needham, J., and Bruiniers, J., concurred.

A petition for a rehearing was denied August 26, 2010, and appellant's petition for review by the Supreme Court was denied October 20, 2010, S186425.