Filed 9/9/24  Bianchi v. Bianchi CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| MARC PAUL BIANCHI,<br><br>        Respondent,<br><br>v.<br><br>NINA BIANCHI,<br><br>        Appellant. | A168349<br><br>(San Mateo County<br> Super. Ct. Nos.<br>19FAM00332A/B) |

The trial court denied Nina Bianchi's request for a domestic violence restraining order (DVRO) against her ex-husband, Marc Paul Bianchi, and granted Marc's request for a DVRO against Nina.  Nina contends the trial court committed several "legal errors" and abused its discretion in doing so.  She has, however, forfeited or waived her arguments.  Moreover, even the truncated record she has put before us reflects substantial evidence supporting the court's rulings, and the complete record supplied by Marc underscores the sufficiency of the evidence.  We therefore affirm.

## BACKGROUND

In 2014, Nina and Marc married in Texas.  Their daughter (hereinafter Daughter) was born the same year.  They soon went into debt, sold the house Marc owned in Texas, and went to live with Marc's mother in San Mateo.

The couple divorced in 2019.  The stipulated judgment of dissolution awarded sole legal and primary physical custody of Daughter to Marc, with

reasonable visitation by Nina. Nina subsequently moved to Southern California to live with a new romantic partner, D.A. She returned to San Mateo several times to visit Daughter, staying at the San Mateo house with Marc and his mother.

Later in 2019, Nina and D.A. went their separate ways. Nina demanded to move back in with Marc and threatened to " 'turn [him] in for abuse' " if he refused. Marc and his mother agreed to let Nina stay for a few days—but she stayed for months. During that time, she made complaints about D.A. to the police and told Marc she was going to start fabricating and expanding on her story. Marc warned her he was " 'not going to perjure [him]self if there's any kind of lawsuit,' " to which Nina replied, " 'Don't worry. I'm going to kill you and take the $2 million [life insurance payment] before you'll need to . . . perjure yourself.' "

Nina spent most of her time working on a lawsuit against D.A. She told Marc she would "torture" D.A. and his friends and family through lawsuits and online harassment. She also threatened Marc, " 'Don't you think everything I'm doing to [D.A.] I could do to you?' "

In May 2020, Nina was still living with Marc and his mother. One morning, she woke Marc and started harassing and insulting him, demanding that he withdraw money from an ATM. She had mentioned going to Texas with Daughter, and Marc had told her she could not take Daughter.

Marc's mother and Daughter woke up during the fight and came out of their bedrooms. Nina told Marc and his mother they were " 'fools for sleeping with one eye open' " because she " 'could have come in the middle of [the] night and . . . ended it all.' " She made a throat-cutting gesture as she said this.

Marc told his mother they needed to call 911, but Nina called first. The police and other responders arrived and placed Nina on a psychiatric hold. She was hospitalized for about a week.

Marc filed a request for a DVRO, and the trial court issued a temporary restraining order and a move-out order against Nina. The court also granted Marc's request for an order restricting Nina to supervised visitation with Daughter.

After Nina was discharged from the hospital, she went to stay with her mother in Texas. Nina then filed her own request for a DVRO, claiming Marc was "violent toward[s] [her] for years, including sexual assault" and rape. She attached photographs she took of bruises Marc purportedly caused in 2016 and 2019 and detailed several alleged instances of abuse. Nina also sought legal and physical custody of Daughter and twice weekly supervised visitation in the meantime. The court granted a temporary restraining order against Marc and ordered that Nina "shall have supervised and virtual visits with [Daughter] up to 2 times a week." The court subsequently issued an amended visitation order stating, "the visits shall not be more than 2 time[s] per week and in accordance with the availability of the supervisor."

Nina remained in Texas and visited with Daughter virtually with a supervisor. She also altered Marc's professional Web site to display an accusation that Marc had assaulted and kidnapped her. And she contacted the police in both Texas and San Mateo, accusing Marc of raping her and committing other crimes.

In late 2021, Daughter made comments about self-harm during a virtual visit with Nina. Nina and the supervisor reported these comments to a child protective agency. Marc did not make Daughter available for several scheduled visits after this, and he requested an order appointing a new

3

supervisor. Nina claimed the missed visits violated the amended visitation order and were acts of domestic violence, and she requested additional visits to make up the lost time. The court issued another visitation order, directing visits to resume with the original supervisor and providing for make-up visits. Nina then moved for an order to show cause for contempt regarding the missed visits and Marc's alleged removal of Nina as a beneficiary of his life insurance policies.

The parties stipulated to an evidentiary hearing on their respective DVRO requests and to the admission of a focused assessment by a medical expert, who recommended a child custody and parenting plan. The evidentiary hearing was held over six days in early 2023. At its conclusion, the trial court announced its decision, granting Marc's request for a DVRO and denying Nina's. The court awarded sole legal and physical custody of Daughter to Marc.

The trial court explained that "ultimately what [its ruling] came down to was credibility." Nina had exhibited "problematic behaviors" in the courtroom, such as rolling her eyes, and video evidence showed her "as a dramatic person and at times a manipulative person." The court found her allegations that Marc had bruised her through physical abuse "hard . . . to . . . credi[t]," considering evidence of the context surrounding the photographs. The court "just didn't buy" Nina's testimony that many of her communications with Marc were "canary trap[s]," or that documents were altered to "identify [a] person who invaded [her] privacy or who leaked [a] document"—particularly because Nina had previously explained inconsistencies in her communications as artistic expressions. In contrast, the court found Marc credible and his fears of "what [Nina is] capable of" to

4

be reasonable given her actions with respect to D.A. and her threats against Marc.

With regard to custody, the trial court found the presumption established by Family Code section 3044 applied and had not been rebutted "[a]t this time."[1]  The court adopted several components of the expert-recommended custody plan and deferred ruling on others until a subsequent hearing.  The court stated it would consider whether Nina's visits with Daughter should continue to be supervised at the next hearing.[2]

Nina's counsel stated on the record that Nina did not request a statement of decision.  Then, after the deadline (Cal. Rules of Court, rule 3.1590(d)), counsel filed a request for one on her behalf.  The trial court did not issue a statement of decision.

## DISCUSSION

### *Standard of Review*

We review orders granting or denying a DVRO, as well as custody and visitation orders, for abuse of discretion.  (*M.S. v. A.S.* (2022) 76 Cal.App.5th 1139, 1143; *Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255.)  "Under this test, we must uphold the trial court 'ruling if it is correct on any basis, regardless of whether such basis was actually invoked.' " (*Montenegro*, at p. 255.)  " '[A] natural and logical corollary' " to this rule is the doctrine of implied findings. (*Abdelqader v. Abraham* (2022) 76 Cal.App.5th 186, 197.)  Absent a proper request for a statement of decision, we apply this doctrine to " 'infer, following

---

[1]  Family Code section 3044, subdivision (a) creates a rebuttable presumption that awarding physical or legal custody of a child to a party who has perpetrated domestic violence against the other party seeking custody within the past five years is detrimental to the child's best interests.

[2]  The court continued the hearing on Nina's request for an order to show cause; any ruling on that request is not before us.

a bench trial, that the trial court impliedly made every factual finding necessary to support its decision.' " (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981 (*Thompson*).)

It is also "a fundamental principle of appellate procedure that a . . . judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) " 'Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' " (*Id.* at p. 609.) So does failure to support appellate arguments with record citations. (*People v. Hoyt* (2020) 8 Cal.5th 892, 939.) An appellant must also " ' "fairly summarize all of the facts in the light most favorable to the judgment" ' "—not summarize just their own evidence—or a claim that the evidence does not support the trial court's findings is waived. (*Contra Costa County v. Pinole Point Properties, LLC* (2015) 235 Cal.App.4th 914, 934–935.)

### Nina Has Forfeited or Waived Her Claims on Appeal

Nina complains the trial court "failed to find that Marc's [temporary restraining order] violations qualified as abuse." Specifically, she claims Marc withheld Daughter from 12 supervised visits in late 2021 and this constituted "abuse." However, in her briefing on appeal, she does not provide citations to the record or summarize the evidence from the DVRO hearing concerning these visits. Instead, she relies largely on her own statements in a declaration and in filings pertaining to requests for *other* orders. She does cite to a supervised visitation report admitted at the hearing that indicates Marc did not appear for these visits. But as we discuss below, without factual context that Nina does not provide, the missed visits, in and of

themselves, do not constitute substantial evidence of abuse. Accordingly, Nina has waived this challenge to the court's rulings.

Nina also claims "the trial court misinterpreted the evidence." She asserts, for example, that contrary to the trial court's statements while ruling from the bench, there were no "text messages" contemporaneous with her photographs of bruises nor were there any "texts" in which she accused Marc of rape and abuse. Nina also claims the court failed to consider, address, or give appropriate weight to certain evidence, and improperly "focused its analysis on Marc's apprehension of future abuse" instead of "proof of past abuse by Nina." However, she has provided only a cherry-picked discussion of the evidence, again failing to fairly summarize all the evidence considered by the court. Accordingly, she has also waived these claims.

Nina further claims that contrary to the trial court's finding, there was "ample evidence" to overcome the custody presumption set forth in Family Code section 3044. Again, this is a quarrel with the sufficiency of the evidence, which Nina has waived by failing to fairly summarize *all* the evidence before the court.

Nina also seems to claim the trial court improperly applied the Family Code section 3044 *custody* presumption to order supervised *visitation,* relying on a passing comment by the court that "domestic violence" determines these issues "in part." Not only does she fail to point to any record evidence that the trial court applied the Family Code section 3044 custody presumption to visitation, she fails to provide any legal authority or reasoned argument why a court may not consider a parent's perpetration of domestic violence as "part" of a decision to order supervised visitation. She has therefore also forfeited this claim. (See *Vitug v. Alameda Point Storage, Inc.* (2010)

7

187 Cal.App.4th 407, 412 [where appellant provided no reasoned argument and cited no statutory or case authority, argument was forfeited on appeal].)

Finally, Nina claims that enjoining her " 'disturbance of peace' due to a hypothetical litigation" she might pursue in the future violates her First Amendment rights and renders this lawsuit "a SLAPP (Strategic Lawsuit Against Public Participation)." Nina never raised this supposed defense to Marc's DVRO request in the trial court, and in her appellate briefing, has provided no reasoned argument or cited any legal authority in support thereof, also forfeiting this claim.

### *Substantial Evidence Supports the Trial Court's Rulings*

Even if we were to overlook Nina's forfeiture and waiver of her claims on appeal, the thrust of Nina's appeal is that the evidence supported her request for a DVRO and did not support Marc's request. In other words, her appeal is a challenge to the sufficiency of the evidence to support the trial court's rulings.

Our standard of review in this regard is well established. We view the evidence "in the light most favorable to the prevailing party, drawing all reasonable inferences in support of" the trial court's findings and the judgment. (*Thompson, supra,* 6 Cal.App.5th at p. 981.) We do not reweigh the evidence, resolve evidentiary conflicts, or make our own inferences or deductions from the evidence. (*Newman v. Casey* (2024) 99 Cal.App.5th 359, 378.) "[T]he testimony of even one witness may support a finding" (*id.* at p. 375), and in a bench trial, " 'the trial court is the "sole judge" of witness credibility' " (*Jennifer K. v. Shane K.* (2020) 47 Cal.App.5th 558, 579). The judge may believe or disbelieve witnesses if there is any rational ground to do so, and these credibility determinations " 'are subject to extremely deferential review.' " (*Ibid.*) "We accept as true all evidence tending to establish the

correctness of the trial court's findings and resolve every conflict in favor of the judgment." (*M.S. v. A.S., supra,* 76 Cal.App.5th at p. 1144.)

As we have recited, the trial court explained its findings "ultimately . . . came down to . . . credibility." The court found Nina was not credible and Marc was credible—an assessment we must accept notwithstanding that "the parties disputed certain aspects of the events that led to the issuance of the restraining order," and Nina "highlights on appeal [her] version of events." (*In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1426 (*Marriage of Evilsizor*).)

### *The DVRO Against Nina*

Marc's testimony provided substantial evidence to support the trial court's rulings.[3] He testified to a number of abusive acts by Nina in the five years before the hearing. In the single reporter's transcript Nina has provided as the record on appeal, the court summarized the evidence of Nina's serious criminal accusations and litigation against D.A., and her like accusations and threats against Marc, that justified "his fear of what [Nina is] capable of." This truncated record, alone, is sufficient to reject Nina's substantial evidence challenge. Moreover, Marc provided the full record, which includes his testimony of Nina's many harassing acts, including her publication of serious criminal accusations on his professional Web site and threats of violence towards him and his mother.[4]

---

[3] While it is not clear exactly what evidence the trial court relied on, that presents no difficulty in our reviewing the record for substantial evidence. Nina failed to timely request a statement of decision, and therefore it was not incumbent on the court to make any specific findings. Rather, we must infer the court made all factual findings necessary to support its rulings. (See *Thompson, supra,* 6 Cal.App.5th at p. 982.)

[4] In her brief, Nina objects to Marc's motion to augment the record as being untimely. However, we previously granted the request for good cause

There is no question the harassment and abuse to which Marc testified constitutes abuse as defined by the Domestic Violence Prevention Act (DVPA). Such abuse includes " 'disturbing the peace of the other party,' " which means destroying their mental or emotional calm. (*Marriage of Evilsizor, supra,* 237 Cal.App.4th at p. 1424.) It may include accessing the other party's electronic information, as well as harassing the other party with accusations intended to disturb them. (See *id.* at pp. 1423–1424; *Bassi v. Bassi* (2024) 101 Cal.App.5th 1080, 1088–1089, 1106–1107.) Abuse may include threatening the other party, whether or not the threats "directly refer to physical violence or cause reasonable fear of bodily harm." (*Vinson v. Kinsey* (2023) 93 Cal.App.5th 1166, 1175–1176.) There is also no question past abuse supports a DVRO. (See *id.* at pp. 1174–1175 [court may issue a protective order under the DVPA upon reasonable proof of past abuse].)

Accordingly, the DVRO against Nina is amply supported by the record and the law.

### *The Denial of a DVRO Against Marc*

Substantial evidence also supports the trial court's denial of Nina's request for a DVRO against Marc.

Marc testified he did not cause Nina's earlier bruises and that she photographed them in front of him for other stated reasons. We must assume the trial court credited Marc's testimony and disbelieved Nina's. (See *Marriage of Evilsizor, supra,* 237 Cal.App.4th at pp. 1426–1427.)

As for the missed visits with Daughter, Marc testified he tried to locate a new supervisor after Nina and the existing supervisor made reports to a

---

shown, and we may, in any case, order the record augmented "[a]t any time, on motion of a party or [our] own motion." (Cal. Rules of Court, rule 8.155(a)(1).)

10

child protective agency. Again, we must assume the trial court credited Marc's testimony and found that he acted in good faith, and that the limited interruption in Nina's visitation with Daughter did not "destroy" Nina's "mental or emotional calm." In short, contrary to Nina's claim, the mere fact Daughter missed visitations did not compel a finding that this constituted "abuse" of Nina. (Cf. *Curcio v. Pels* (2020) 47 Cal.App.5th 1, 13 [with respect to the sufficiency of the evidence to establish "abuse," the courts have not held that a "restraining order may issue based on any act that upsets the petitioning party"].)

## III. DISPOSITION

The trial court's order denying Appellant's request for a DVRO and granting Respondent's request, is affirmed. Respondent shall recover costs on appeal.

_____
Banke, J.

We concur:


_____
Humes, P.J.


_____
Langhorne Wilson, J.

A168349, Bianchi v. Bianchi

12