Filed 3/21/25  Mensinger v. Meadows CA1/1
Opinion following rehearing

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| LESTER MICHAEL MENSINGER et al., <br><br> Cross-complainants and Respondents, <br><br> v. <br><br> CHARLES VERNON MEADOWS et al., <br><br> Cross-defendants and Appellants. | A169289 <br><br> (Alameda County Super. Ct. No. 22CV020813) |

Charles Vernon Meadows and Shuyi Liu appeal from the trial court's order denying their special motion to strike cross-claims by Lester Michael Mensinger and Michelle N. Biche under Code of Civil Procedure section 425.16 (the anti-SLAPP[1] law).  Appellants failed to meet their initial burden to show respondents' claims fall within the statute by identifying the "acts each challenged claim rests on" and showing "how those acts are protected under" one of four "statutorily defined categor[ies] of protected

---

[1] " 'SLAPP' is an acronym for 'strategic lawsuit against public participation.' " (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381, fn. 1 (*Baral*).)

activity." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).)  We affirm.

## I.  BACKGROUND

### A.    *The Parties' Dispute*

Appellants and respondents are neighbors on a private cul-de-sac.  For several years, they have been embroiled in a dispute over what appellants claim is unpermitted and illegal construction by respondents, and what respondents claim is trespassing and harassment by appellants.[2]

According to appellants, respondents engaged in large-scale dumping and grading to build an unpermitted recreational vehicle pad on their property, which caused a hillside slope to fail.  Then, they dumped fill and debris on and trespassed on appellants' property and easement in an apparent effort to retain the failing hillside.  These activities damaged and impeded appellants' access to their property.  Appellants lodged a complaint, which was investigated by the Code Enforcement Division of the Alameda County Community Development Agency and the Alameda County Public Works Agency.  They then complained to several more local government agencies about respondents' activities.  Appellants took photographs of respondents and their property to support their complaints.

Meanwhile, Mensinger filed separate requests for civil harassment restraining orders against appellants, claiming they drove recklessly, "use[d] [a] vehicle as a weapon," and filmed and photographed respondents and their family members and guests.  Appellants took photographs to support their defense.

---

[2] The parties have exchanged many more accusations of harassment and other improper conduct than we will repeat here.  Our goal is only to put the allegations giving rise to appellants' special motion to strike in context.

Ultimately, appellants filed this lawsuit, seeking damages resulting from respondents' construction-related activities and from their alleged harassment of appellants in retaliation for their complaints.

## B.    *Respondents' Cross-complaint*

Respondents filed a cross-complaint for wrongful use of administrative proceedings, defamation, and intentional trespass. Appellants demurred to all three cross-claims and moved to strike the first two under the anti-SLAPP law. The trial court sustained the demurrer with leave to amend as to the first cross-claim and denied the motion to strike without prejudice.

Respondents filed an amended cross-complaint, asserting claims for nuisance and trespass. They alleged that appellants came onto their property many times, sometimes with their unleashed dogs, despite requests that they stop. Appellants repeatedly threw vegetation and other debris onto respondents' property. Meadows would back his vehicle onto their property to turn it around, and when respondents positioned a metal trough to prevent this, Meadows repeatedly slammed his vehicle into it.

Respondents further alleged that appellants filmed and photographed them and their family "for no legitimate purpose," including with security cameras pointed towards their property. Meadows made "false complaints with public agencies," among them the Alameda County Public Works Agency.

Respondents obtained temporary restraining orders against appellants and reported their misconduct to law enforcement, but appellants' trespassing and harassment continued. Meadows placed three cameras on 15-foot poles pointed towards respondents' backyard. He aimed a spotlight directly into their bedroom and installed cameras on his second-story deck that pointed at respondents' bedroom window. As grading and other work

proceeded on respondents' property, appellants harassed workers and Liu sprayed one with a hose. Meadows was arrested for "harassing" respondents' son. He again trespassed on their property, argued with their contractors, and refused to move his vehicle so an accessory dwelling unit could be legally delivered in accordance with permits.

## C.    *Appellants' Special Motion to Strike*

Appellants filed an anti-SLAPP motion to strike the first and second cross-claims and unspecified "portions" of the amended cross-complaint "including, but not limited to facts alleged that are common to all causes of action." As grounds for their motion, they claimed their "activit[ies] underlying the allegations" in the amended cross-complaint "were in furtherance of their petitions for redress or free speech" and the photographs they took were "available . . . during public hearings regarding [respondents'] unpermitted construction and illegal dumping, which is a matter of public concern."

In their moving papers, appellants declared that their "us[e] [of] photographs to document violations" by respondents was "the focus of the cause of action for nuisance and trespass," citing "[b]y way of example" the allegations about Meadows's complaints to public agencies at paragraph 10 of the amended cross-complaint. Appellants dismissed the many remaining allegations in the cross-complaint as "vague, unsupported by admissible evidence and false," referring to a lengthy "Statement of Evidence" rather than addressing the remaining allegations directly in their memorandum of points and authorities. Appellants did not specify which of the four statutory categories of protected activity they claimed respondents' allegations implicated, citing to three of the categories without explanation in their notice of motion and never addressing them in their supporting

4

memorandum.  Nor did appellants discuss the elements of respondents' claims for nuisance and trespass or explain how paragraph 10 or any other portion of the amended cross-complaint related to those elements.[3]

## D. *The Trial Court Holds Hearings and Denies Appellants' Motion*

The trial court issued a tentative ruling denying appellants' motion on the ground that they failed to meet their burden under *Bonni* to identify the acts alleged in the cross-complaint they claimed were protected.  Appellants contested the tentative ruling and the court held a hearing at which Meadows testified concerning his complaints to public agencies and his use of photographs to support them.  The court then issued an amended tentative ruling stating that it would continue the matter to "allow both sides to augment the record, including allowing Mr. Meadows opportunity to complete his oral testimony."  The court held a further hearing at which counsel presented oral argument in response to the tentative ruling and Meadows provided additional testimony.

After this hearing, the trial court issued an order denying appellants' motion.  The court ruled that appellants failed to identify the acts alleged in

---

[3] The statement of evidence (an amended version of which was also filed) is over 80 pages long and addresses nearly every allegation in the amended cross-complaint in a two-column format.  The first column mixes together allegations that appellants contend are false with allegations they apparently claim concern protected activity.  The second column similarly mixes together argument about the merits of the allegations identified in the first column with argument that some of the alleged conduct furthered complaints to public agencies and litigation.  Despite its length, the statement of evidence does not set forth reasoned argument connecting the elements of respondents' cross-claims to protected activity, or (aside from two bare references addressed to paragraph 10) identify which statutory categories of protected activity appellants maintain the cross-claims arise from and explain how.

the cross-complaint they claimed were protected, other than the allegations of false complaints to public agencies in paragraph 10.  The court determined that paragraph 10 did not concern protected activity because "there is no constitutional right to make false reports to government agencies."  Otherwise, the court explained, appellants' argument that the amended cross-complaint was "based on [their] petitioning activity" was "predicated upon . . . [Meadows's] oral testimony" and did not address the allegations of the cross-complaint, improperly "bypassing the first step of identifying allegations of protected conduct."  Since appellants failed to meet their initial burden, the court concluded it did not need to address the merits of respondents' allegations in the second step of the anti-SLAPP analysis.

## II.  DISCUSSION

Appellants now claim their acts underlying the amended cross-complaint were (1) protected statements or writings before an official proceeding (Code Civ. Proc.,[4] § 425.16, subd. (e)(1)) or connected with an issue in such a proceeding (*id.*, subd. (e)(2)), and (2) evidence gathering " 'in furtherance of' " their petitioning activities.  They urge the trial court erred by failing to strike paragraph 10 of the amended cross-complaint when they contested that their complaints to public agencies were false, and also by failing to consider evidence that their photography was integral to their petitioning activity and to strike various photography-related allegations discussed in their statement of evidence.  Appellants also maintain respondents failed to show a likelihood of success on the merits of their claims—including several that appellants do not claim are based on protected activity.

---

[4] All statutory references are to the Code of Civil Procedure.

6

We find the allegations in paragraph 10 are merely incidental to respondents' cross-claims, and the trial court correctly determined that appellants did not meet their initial burden to show the cross-claims arise from protected activity. We therefore affirm, without the need to address most of appellants' arguments.

## A. *Relevant Legal Principles*

### 1. The Anti-SLAPP Statute and Our Standard of Review

The anti-SLAPP law helps "combat lawsuits designed to chill the exercise of free speech and petition rights." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060 (*Park v. Board of Trustees*).) It provides that claims arising from an act "in furtherance of [a] person's right of petition or free speech . . . in connection with a public issue shall be subject to a special motion to strike," unless the plaintiff or cross-complainant establishes "a probability [of] prevail[ing] on the claim." (§ 425.16, subd. (b)(1).)

There are two steps to an anti-SLAPP motion. First, the moving party "must establish that the challenged claim arises from activity protected by" the statute. (*Baral*, *supra*, 1 Cal.5th at p. 384.) Only "[i]f the defendant makes the required showing" does "the burden shift[] to the plaintiff to demonstrate the merit of the claim" in a " 'summary-judgment-like procedure.' " (*Ibid.*) Stated differently, "[o]nly a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

We review de novo the trial court's ruling on an anti-SLAPP motion. (*Park v. Board of Trustees*, *supra*, 2 Cal.5th at p. 1067.) " 'If the trial court's

7

decision is correct on any theory applicable to the case, we affirm the order regardless of the correctness of the grounds on which the lower court reached its conclusion.' " (*Young v. Midland Funding LLC* (2023) 91 Cal.App.5th 63, 80.)

### 2. The First Step of the Analysis

Here we are concerned with the first step of the anti-SLAPP analysis. To meet its burden in this step, the moving party must "identify what acts each challenged claim rests on" and "show how those acts are protected under a statutorily defined category of protected activity"—of which there are four (§ 425.16, subd. (e)(1)–(4)). (*Bonni, supra*, 11 Cal.5th at p. 1009.) This involves "two related showings." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 887 (*Wilson*).) The moving party "must demonstrate activity qualifying for protection" by "[c]omparing its statements and conduct against the statute." (*Ibid.* [citing § 425.16, subd. (e)].) Then, "comparing that protected activity against the complaint," the moving party "must also demonstrate that the activity supplies one or more elements of a plaintiff's claims." (*Ibid.*)

Critically, "a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park v. Board of Trustees, supra*, 2 Cal.5th at p. 1060.) We therefore examine the elements of the relevant claims and distinguish between protected conduct that forms the basis for liability and protected conduct that merely provides evidentiary support or context for the claim. (*Id.* at pp. 1062–1065; *Baral, supra*, 1 Cal.5th at p. 394.) The plaintiff's "subjective intent . . . is not relevant." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) "[T]he mere fact an action was filed after protected activity took place," even if it

8

"arguably may have been triggered by protected activity," does not mean it arises from that activity for purposes of the anti-SLAPP statute. (*City of Cotati*, at pp. 76, 78.)

### 3. Moving Party's Burden as to Mixed Causes of Action

When addressing a " ' "mixed cause of action" '—that is, [one] that rests on allegations of multiple acts, some of which constitute protected activity and some of which do not"—courts analyze each "set of acts supplying a basis for relief" in order to determine whether they "are protected and, if so, whether the claim they give rise to has [enough] merit to survive the motion." (*Bonni, supra*, 11 Cal.5th at p. 1010.)

The moving party can directly "attack parts of a count as pleaded" by using an anti-SLAPP motion "like a conventional motion to strike." (*Baral, supra*, 1 Cal.5th at p. 393.) Otherwise, when moving to strike an entire cause of action, the moving party bears the burden to show "that each allegation supporting [the] claim of recovery is one that rests on protected activity." (*Bonni, supra*, 11 Cal.5th at p. 1012.) "If a cause of action contains multiple claims and a moving party fails to identify how the speech or conduct underlying some of those claims is protected activity, it will not carry its first-step burden as to those claims." (*Id.* at p. 1011.)

"Our Supreme Court's guidance from *Baral* to *Bonni* explains that while courts may strike less than the entirety of a complaint or pleaded cause of action, the trial court is not required to take on the burden of identifying the allegations susceptible to a special motion to strike." (*Park v. Nazari* (2023) 93 Cal.App.5th 1099, 1109.) The moving party must identify, "in the initial motion," the portion of the pleading "that comprises a challenged claim and explain[] 'the claim's elements, the actions alleged to establish those

9

elements, and wh[y] those actions are protected.' " (*Ibid.*, quoting *Bonni, supra*, 11 Cal.5th at p. 1015.)

## B. *Appellants Failed to Meet Their Initial Burden*

As they did in the trial court, appellants give short shrift to the first step of the anti-SLAPP analysis in their appellate briefing. Again, that step requires the moving party not only to "demonstrate activity qualifying for protection" under one of the four categories described in section 425.16, subdivision (e), but then to "compar[e] that protected activity against the complaint" to show it "supplies one or more *elements of a plaintiff's claims*." (*Wilson, supra*, 7 Cal.5th at p. 887, italics added.) Appellants only briefly address the first aspect of their burden and do not even attempt to meet the second.

Appellants raise two types of activity they claim are protected under the anti-SLAPP statute. The first is Meadows's lodging of complaints with public agencies as alleged at paragraph 10 of the cross-complaint. Such complaints are statements or writings before an official proceeding (§ 425.16, subd. (e)(1)) or in connection with an issue under consideration in such a proceeding (*id.*, subd. (e)(2)). But they do not supply an element of respondents' claims for nuisance or trespass. Such claims arise from, respectively, the defendant's interference with the plaintiff's use and enjoyment of their property or the defendant's entry onto the plaintiff's property.[5] The lodging of complaints is neither. Rather, the allegations at

---

[5] A claim for private nuisance arises from (1) interference with the plaintiff's use and enjoyment of their property that is (2) substantial and (3) unreasonable. (*Mendez v. Rancho Valencia Resort Partners, LLC* (2016) 3 Cal.App.5th 248, 262–263.) The elements of a claim for trespass are (1) the plaintiff's ownership or control of property that the defendant (2) intentionally, recklessly, or negligently enters, (3) without permission,

10

paragraph 10 "merely provide context, without supporting a claim for recovery," and thus "cannot be stricken under the anti-SLAPP statute." (*Baral, supra*, 1 Cal.5th at p. 394.)

The second type of activity appellants raise is "taking evidentiary photos in support of their petitioning activities." Even assuming, as appellants contend, that these photographs are writings in an official proceeding because they were later used in a proceeding, appellants fail to explain how respondents' cross-claims arise from the photographs. "[A] claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of." (*Park v. Board of Trustees, supra*, 2 Cal.5th at p. 1060.) Here, it is appellants' alleged trespassing on respondents' property and harassment of respondents and others on the property that constitute the acts for which liability is asserted—including many acts that have nothing to do with photography, like "shin[ing] a flashlight into [respondents'] bedroom in the evening hours," damaging respondents' personal property, "yelling at [respondents'] contractors almost daily," and spraying a delivery driver with a hose. Respondents' cross-claims do not arise from appellants' use of photographs in complaints to public agencies or in litigation.

*Golden Gate Land Holdings* illustrates the point. In that case, the operator of a horse racing track sued an animal rights organization whose affiliated individual defendants climbed over a fence surrounding the track and remained there for several hours, preventing scheduled races from taking place. (*Golden Gate Land Holdings, supra*, 81 Cal.App.5th at p. 87.)

where (4) the plaintiff suffers harm and (5) the defendant's conduct was a substantial factor in causing the harm. (*Golden Gate Land Holdings LLC v. Direct Action Everywhere* (2022) 81 Cal.App.5th 82, 90–91 (*Golden Gate Land Holdings*).)

11

The animal rights organization filed an anti-SLAPP motion, maintaining it had been sued for opposing the operator's horse-racing business, gathering signatures on a petition to close it, and organizing protests against the horse track. (*Id.* at p. 88.) But as we explained, these protected activities were not the basis for the operator's claims for trespass and intentional interference with prospective economic advantage. (*Id.* at p. 91.) "The cause of action for trespass was necessarily based on the individual defendants' trespass" by entering the operator's property, and the claim for intentional interference was premised on the allegation that this caused the operator economic harm. (*Ibid.*) While the complaint alleged that the animal rights organization maintained an online petition to shut the operator down and "streamed live video footage of the trespass," the operator's "claims did not seek recourse from [the organization] for these activities." (*Id.* at pp. 91–92.) Like the allegation about Meadows's complaints here, those allegations were "extraneous to the claims" and merely provided context. (*Id.* at p. 92.)

To the extent that some portion of respondents' claims arises from appellants' *photography* as opposed to their photographs, it was appellants' burden to explain how this was protected activity by "[c]omparing" their "conduct against the statute"—and then to show this activity supplied one or more elements of a cross-claim by referring to specific allegations in the cross-complaint. (*Wilson, supra,* 7 Cal.5th at p. 887.) This they failed to do. Their anti-SLAPP motion did not identify which of the four "statutorily defined categor[ies] of protected activity" encompassed their photography and explain "how those acts are protected" under that category. (*Bonni, supra,* 11 Cal.5th at p. 1009.) Their motion "did not identify any 'particular allegations' of protected activity that they contended should be stricken," *Littlefield v. Littlefield* (2024) 106 Cal.App.5th 815, 826, nor show how those

allegations supplied an element of one or more cross-claims. While appellants mentioned allegations now directly targeted by their appellate briefing in their prolix statement of evidence, neither respondents nor the trial court were required to weed through and read into that document to "make [appellants'] case for [them]." (*Bonni*, *supra*, 11 Cal.5th at p. 1011; see also *Young v. Midland Funding LLC*, *supra*, 91 Cal.App.5th at pp. 99–100.)

In their appellate briefing, appellants rely entirely on the statutory categories addressing statements or writings before an official proceeding or connected with an issue in such a proceeding (§ 425.16, subd. (e)(1) & (2)). (See *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1114–1115 [claims arising from communications in furtherance of official proceedings were subject to anti-SLAPP statute].) But their acts of photographing respondents and their property are not statements or writings. Appellants expressly disclaim any reliance on the one statutory category addressing more general "conduct in furtherance of the exercise of the constitutional right of petition"—presumably because the statute requires such conduct be connected "with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4); see *Briggs*, at p. 1117.) Appellants have forfeited any argument that this category applies. (See *Vitug v. Alameda Point Storage, Inc.* (2010) 187 Cal.App.4th 407, 412.) And to the extent they claim—contrary to statements by our Supreme Court (see, e.g., *Bonni*, *supra*, 11 Cal.5th at p. 1009)—that the anti-SLAPP statute protects a broader range of conduct than described by the four statutory categories, they fail to provide any relevant legal authority or reasoned argument to support this position. Any such argument is also forfeited.

Finally, since appellants did not even attempt to show the entire cross-complaint or any cross-claim "was based solely on protected activity, they did

not show that the court could properly strike the [cross-complaint] or all of its causes of action." (*Littlefield v. Littlefield, supra,* 106 Cal.App.5th at p. 826.) Their arguments that admittedly nonprotected aspects of the cross-claims lack merit have no bearing on their initial burden to show the claims arise from protected activity.

Appellants failed to meet their initial burden to show any portion of respondents' cross-complaint arises from activity protected under the anti-SLAPP law.

## III. DISPOSITION

The order denying the special motion to strike is affirmed. Respondents are entitled to their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

HILL, J.*

WE CONCUR:

HUMES, P. J.

LANGHORNE WILSON, J.

---

* Judge of the San Mateo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.